## NELSON ELECTRIC MFG. CO. v. SHATWELL et al.

No. 34299. Aug. 1, 1950.

Rehearing Denied Sept. 26, 1950.

*222 P. 2d 750.*

Pierce, Rucker, Mock, Tabor & Duncan, of Tulsa, for petitioners.

Finch & Finch, of Sapulpa, and Mac Q. Williamson, Atty. Gen., for respondents.

LUTTRELL, J. This is an original petition filed in this court by Nelson Electric Company, and its insurance carrier, to review an award made by the State Industrial Commission to Leroy Shatwell.

From the record it appears that Shatwell, while employed by petitioner Nelson Electric Company, sustained an accidental injury on April 6, 1949; that the plant of respondent in Tulsa is surrounded by a fence some eight feet high; that Shatwell, being required to report for work at 7 o'clock in the morning, found the gate through which employees were supposed to enter the plant closed when he arrived at the plant at 6:45 a. m., and climbed the fence in order to get into the plant; that while climbing the fence he fell, fracturing his collar bone one inch from the left end.

Shatwell testified that he and the other employees in his department, twelve in number, frequently climbed the fence when they arrived at the plant and found the gate closed; that in order to change clothes and prepare for work, which began at 7 o'clock, it was necessary for him to enter the plant about fifteen minutes before 7 o'clock, and that frequently when he arrived at that time the gate would not be open and he would climb the fence. He testified that the other employees in his department habitually climbed the fence in order to get to work on time, and that on this particular morning, when he reached the plant, some seven or eight of the twelve employees in his department were already there, having climbed the fence prior to his arrival. This last statement is not disputed or contradicted by any witness. Three employees testified for petitioner that the gate was usually open in time for them to change clothes and get to work, but when they arrived early and the gate was not open they climbed the fence to get into the plant. The foreman whose duty it was to open the gate testified that he opened the gate anywhere from eighteen to twelve minutes before 7 o'clock, and that he had never told the men not to climb the fence. From all the testimony it appears that the employees in the department in which claimant was employed frequently climbed the fence, and that.

this practice was known to the foreman, and was not forbidden, but was permitted by him.

The only contention urged by petitioners is that the evidence does not show that claimant was injured in the course of his employment or that the injury arose out of the employment. They urge that claimant had a safe and usual method of entrance, and that when he undertook to enter the plant by another method, which was unsafe and hazardous, he was in effect a trespasser and not where he rightfully belonged on the premises as the result of his employment. In support of their contention they cite E. I. duPont de Nemours Co. v. Redding, 194 Okla. 52, 147 P. 2d 166; Moore & Scott Iron Works v. Industrial Accident Comm., 36 Cal. App. 582, 172 P. 1114; Dulac v. Dumbarton Woolen Mills, 120 Me. 31, 112 Atl. 710, and Inland Steel Co. v. Lambert, 66 Ind. App. 246, 118 N. E. 162.

In duPont de Nemours Co. v. Redding, supra, the claimant was injured in a parking lot operated by the employer while in the act of approaching the car in which he intended to ride home, at the end of his day's work. In that case we said:

"It is generally held that an injury sustained by an employee while going to or from his work occurring on the premises owned or controlled by his employer, is deemed to have arisen out of and in the course of his employment."

We further said that the fact that the accident occurred on the premises did not determine the liability of the employer, but if the employee was rightfully upon the premises owned or controlled by the employer, and was leaving in the customary manner at the close of the day's work, the act of leaving was in the course of employment.

Also, in Standard Paving Co. v. Newman, 194 Okla. 166, 147 P. 2d 983, we

held that where employees habitually used a partially completed portion of a highway with the knowledge and consent of the employer as a means of access to the place of employment, an injury sustained by the employee while using such portion of the highway in traveling to work arose out of and in the course of employment, citing numerous cases.

In the cases from other jurisdictions cited by petitioners and listed above, it appears that the act of the employee whereby he sustained his injury was not a usual or customary method of leaving or entering the place of employment, but the evidence in those cases showed that it was not customary, and that the method employed had never, so far as the evidence showed, been used before by the injured employee or any other employee in the plant.

In Dulac v. Dumbarton Woolen Mills, supra, the Supreme Court of Maine pointed out that there was no evidence of usage of the method by which the claimant attempted to leave the plant and was injured. In that case that court said:

". . . the only ground upon which the finding of the chairman could be based is that it was the habit of the employees to use the elevator for the purpose of exit, and that the plaintiff had a right to do as the others did, upon the implied consent of the employer. But it is evident that for one to invoke the use of a particular usage, as this was, as a reason or excuse for changing contractual relations, it must first be shown that such usage is known to the party invoking it. Such knowledge is absolutely negatived by the plaintiff's own testimony."

The court further called attention to Von Ette's Case, 223 Mass. 56, 111 N. E. 696, which case held that where there was evidence of a general practice of men who worked in a composing room to go out upon the roof to get fresh air and cool off, which practice was known to the employer, and an

employee went out on the roof and fell therefrom and was killed, that the injury arose out of and in the course of employment.

The rule announced in these cases is, in our opinion, controlling here. The evidence shows that the claimant was injured while entering the plant in a customary manner known to and acquiesced in by the employer, and while upon the premises of the employer. Therefore, under the authorities cited above, the injury he received arose out of and in the course of his employment, and the finding of the commission that the injury was compensable is amply sustained by the evidence.

Award sustained.

WELCH, CORN, HALLEY, and JOHNSON, JJ., concur. GIBSON and O'NEAL, JJ., dissent.