2015 OK CIV APP 37

**Mary EWY, Petitioner,**

v.

**SOUTHWEST CUPID, Guarantee Insurance Co., and The Workers' Compensation Court, Respondents.**

No. 112,999.

Court of Civil Appeals of Oklahoma, Division No. 4.

March 30, 2015.

Stacey Lobaugh, Ponca City, Oklahoma, for Petitioner.

Patrick S. Parr, McAnany, Van Cleave & Phillips, P.A., Tulsa, Oklahoma, for Respondents.

DEBORAH B. BARNES, Judge.

¶ 1 Petitioner Mary Ewy (Claimant) seeks review of an Order of a three-judge panel of the Workers' Compensation Court of Existing Claims affirming the order of the trial court. The trial court denied Claimant's compensation claim under the second exclusion found in 85 O.S.2011 § 312(6); that is, the trial court denied coverage on the basis that Claimant's injury occurred in an area where essential job functions are not performed. The three-judge panel, with one judge dissenting, affirmed. Based on our review, we vacate the Order and remand for further proceedings.

## BACKGROUND

¶ 2 In Claimant's Form 3, she alleged that in January, 2013, while employed as a "floater" for Respondent Southwest Cupid (Employer), she sustained a single-event injury to her left hand when she fell on her way back to work. Trial was held in January, 2014. At trial, Employer admitted Claimant was its

employee and "covered under the Act." However, Employer denied Claimant sustained a compensable injury "based on [*Leandro v. American Staffcorp, Inc.,* 2013 OK CIV APP 68, —— P.3d ——]," an opinion affirming a denial of compensability for an injury that occurred in an area controlled by the employer, but where essential job functions were not performed.

¶ 3 Claimant testified at trial that her job as a floater for Employer consisted of the following: "Whenever other employees holler that they need something [I] go and get it for them ... and I lift boxes up on to the shipping line." Claimant testified that the accident occurred as "I was returning from lunch and I parked my car in the parking lot and I was walking to the building and I tripped on a piece of cement in the sidewalk. It came out of the sidewalk and I fell." She stated that her shift had already begun earlier that day, and the accident occurred as she was returning to work after her lunch break. She stated that, at the end of her 45–minute lunch break, she drove back to work and parked her car in the parking lot beside Employer's building. She then "had to walk around the side of the building and down the sidewalk and then around to the front door." She stated that she was walking back to work on the only sidewalk that leads to the front door when she fell. She stated that the front door is the only door through which she can access Employer's building.

¶ 4 On cross-examination, Claimant responded in the affirmative when questioned whether Employer "provide[s] a break or lunchroom area or kitchen?" Claimant also responded in the affirmative when questioned whether she "had the ability to have lunch at the office or at the building[?]" Despite this ability, Claimant testified that she went home for lunch, and she agreed that this was her own choice.

¶ 5 Also on cross-examination, Claimant testified that the parking lot where she parked her car is Employer's parking lot. She testified that the sidewalk where she fell is used only by Employer and Employer's employees.

¶ 6 Claimant testified that she does not have a workstation at work because she has what is "called a floating job. You go from different areas to different areas for what you're needed to do." However, she stated that Employer's building is one large warehouse, and she responded in the negative when questioned whether "any part of your job take[s] place outside of the warehouse?" She also responded in the negative when questioned whether "any part of your job[ ] [is] done around the area where you fell?"

¶ 7 In its order filed in February, 2014, the trial court denied compensability, finding that Claimant's

injury returning to work after a lunch break while on employer controlled property is not compensable under Title 85, O.S. § 312(6) as it is not an area under which essential job functions were performed.... All parties agreed [C]laimant had no job duties in the area [where] she fell. She furthermore was coming off a personal errand as she had chosen to go home for lunch and was returning to the job site. She could have chosen to eat at Employer's place of business. She chose not to....

¶ 8 Claimant appealed the trial court's order to a three-judge panel. In its Order filed in June, 2014, the three-judge panel, with one judge dissenting, affirmed the trial court's order denying compensation.

¶ 9 From the three-judge panel's Order, Claimant appeals.

## STANDARD OF REVIEW

¶ 10 The applicable standard of review is set forth in *Graham Public Schools v. Priddy,* 2014 OK 30, 328 P.3d 1190, and *Carney v. DirecTV Group, Inc.,* 2014 OK CIV APP 4, 316 P.3d 234. In *Priddy,* the Oklahoma Supreme Court stated:

Where there is no conflict in the evidence and no opposite inferences to be drawn from undisputed proof, the question of whether an injury arises out of and in the course of employment is one of law. Questions of law are reviewed by a de novo standard under which this Court has plenary, non-deferential and independent au-

thority to determine whether lower courts have erred in their legal rulings.

*Priddy,* ¶ 8 (citations omitted). Similarly, in *Carney,* this Court stated:

> The issue of whether a claimant's injury arose out of and in the course of employment has historically been a question of fact for the Workers' Compensation Court. However, the material fact questions relating to Claimant's presence in the parking lot and how her injury occurred were undisputed. Where there is no conflict in evidence and no opposite inferences may be drawn from undisputed proof, the question is one of law. This court reviews conclusions of law by a *de novo* standard, performing an independent, non-deferential re-examination of the trial court's legal rulings. If the undisputed facts do not support the workers' compensation court's order, the order will be vacated.

*Carney,* ¶ 9 (citations omitted) (internal quotation marks omitted).

## ANALYSIS

 ¶ 11 The law in effect at the time of the alleged injury provides, in pertinent part, as follows:

> The following shall not constitute a compensable injury under the Workers' Compensation Code:
>
> . . . ;
>
> 6. An injury which occurs outside the course of employment. *Employment shall be deemed to commence when an employee arrives at the employee's place of employment to report for work and shall terminate when the employee leaves the employee's place of employment, excluding areas not under the control of the employer or areas where essential job functions are not performed;* provided, however, when the employee is instructed by the employer to perform a work-related task away from the employee's place of employment, the employee shall be deemed to be in the course of employment when the employee is en-

gaged in the performance of job duties directly related to the task as instructed by the employer, including travel time that is solely related and necessary to the employee's performance of the task. Travel by a policeman, fireman, or a member of a first aid or rescue squad, in responding to and returning from an emergency, shall be deemed to be in the course of employment.

85 O.S.2011 § 312 (emphasis added). "Section 312(6) addresses only . . . the requirement that a compensable injury occur 'in the course of' employment, and provides statutory guidance for determining that issue. Prior to the adoption of this language, the 'in the course of' requirement was defined by judicial decisions." *Carney,* ¶ 11.

¶ 12 An earlier version of this statute was enacted in 2010.[1] As stated by the Oklahoma Supreme Court, the 2010 version also provided, "in pertinent part, that 'Employment shall be deemed to commence when an employee arrives at the employee's place of employment to report for work and shall terminate when the employee leaves the employee's place of employment.'" *Priddy,* ¶ 4. The 2010 version also contained the same "two exclusions: (1) injuries in areas not under the control of the employer, and (2) injuries in areas where essential job functions are not performed." *Id.* ¶ 4.

¶ 13 As was the case in *Carney, Leandro,* and *Priddy,* the undisputed facts in this case render the first exclusion inapplicable. *See Carney,* ¶ 27 ("It is undisputed that [the employer] controlled the parking lot where [the claimant] fell."); *Leandro,* 2013 OK CIV APP 68, ¶ 8, —— P.3d —— (The parking lot where the injury occurred was "leased by [the employer]" and the employer, therefore, had "some limited control" of the parking lot sufficient to render the first exclusion inapplicable.). *See also Priddy,* ¶ 2 (The claimant slipped on a rug placed outside the employer's door that employees used to exit the employer's school building). Here, the parking lot where Claimant parked her car is

---

1. Title 85 O.S. Supp.2010 § 11(A)(5). *See also Hogg v. Okla. Cnty. Juvenile Bureau,* 2012 OK 107, ¶ 4, 292 P.3d 29 (demonstrating that the pertinent statutory language is the same in both versions); *Carney,* ¶ 10 ("The language in

[§ 312(6)] was first adopted in 2010, *see* 85 O.S. Supp.2010 § 11(A)(5), and reenacted the following year."). We note that this language was repealed by Laws 2013, SB 1062, ch. 208, § 171, eff. February 1, 2014.

Employer's parking lot, and the sidewalk where the injury occurred is located on Employer's property. Furthermore, the sidewalk where Claimant fell is the only sidewalk leading to the front door of Employer's warehouse, and this front door, in turn, is the only door through which Claimant can access Employer's building. Finally, the sidewalk where Claimant fell is used only by Employer and Employer's employees. Consequently, we conclude that the area where Claimant fell is an area "under the control" of Employer for purposes of § 312(6), and, accordingly, the first exclusion does not apply.

¶ 14 We now turn to the second exclusion, which directs that injuries that occur in "areas where essential job functions are not performed" are not compensable because outside the course of employment. The term "essential job functions" has been construed in a manner consistent with case law predating the enactment of the statutory language at issue, and a narrow interpretation of this term has been rejected. In *Carney*, this Court indicated that a narrow construction of this term would result in the denial of compensation for injuries that occur in areas controlled by the employer, but allow compensation for other injuries that occur in areas controlled by the employer, in a manner that is inconsistent and irrational. For example, we stated in *Carney* that such a narrow construction would

> deny coverage to a worker employed as a truck driver injured while walking from the worker's personal vehicle to the employer's office, but cover an injury if it occurred while the worker, after "clocking in," was walking across the same parking lot to the employer's vehicle to begin work. The multiplicity of inconsistent results from this interpretation is not permissible. Statutory construction that would lead to an absurdity must be avoided and a rational construction should be given to a statute if the language fairly permits.

*Carney*, ¶ 23 (citation omitted) (internal quotation marks omitted).

¶ 15 Although an overly narrow interpretation of the term "essential job functions" has been rejected, the second exclusion "adopted by the Legislature would be

superfluous if *any* injury on premises controlled by an employer was automatically deemed to be in the course of employment." *Leandro*, 2013 OK CIV APP 68, ¶ 11, —— P.3d ——. Moreover, "it has long been recognized that mere presence on an employer's premises is not determinative of compensability. Not all injuries on an employer's premises are compensable." *Id.*

¶ 16 Rather than deeming *any* injury on premises controlled by an employer to have automatically occurred during the course of employment, this Court, in *Carney*, and the Oklahoma Supreme Court, in *Priddy*, have concluded that when an injury occurs in an area under the control of the employer, the longstanding case law addressing "a going or coming injury" is to be applied. *See Priddy*, 2014 OK 30, ¶ 5, 328 P.3d 1190.

¶ 17 In *Carney*, the claimant was injured in a parking lot controlled by the employer while returning to work from her lunch break. "As [the claimant] entered [the employer's] parking lot, she tripped over a parking-lot curb, hit her right shoulder on the bumper of a car parked on the lot and fell to the pavement." *Carney*, ¶ 2. In *Carney*, as in the present case, the trial court denied compensability based on the second exclusion: i.e., in *Carney*, the trial court found that "the location of the incident is not an area where essential job functions are performed and therefore the injuries occurred outside the course of her employment...." *Id.* ¶ 7.

¶ 18 As stated, the *Carney* Court construed the second statutory exclusion in a manner consistent with "going to or coming from work" case precedent predating the 2010 statutory change. The *Carney* Court found that the claimant's injury—an injury that occurred while the claimant was walking back to work from her lunch break and in an employer-controlled area-was not excluded under the second exception. The *Carney* Court concluded that "the trial court's determination that the [c]laimant's injury was not compensable because it did not occur in a place where 'essential job functions are performed' is ... contrary to long-established Oklahoma law." *Id.* ¶ 25.

¶ 19 In *Leandro,* the claimant was also injured as a result of a fall in a parking lot. The claimant in *Leandro* went to her car during a scheduled 15–minute break to retrieve a water bottle because she was thirsty. "As she approached her car, [c]laimant caught her foot in a crack in the parking lot and she fell onto her hands." *Leandro,* ¶ 4. However, evidence was presented that the claimant went to her car for water despite the fact that

> a water fountain was available immediately inside [c]laimant's work area and there were pop machines and water machines in a break room, as well as refrigerators for the employees to use. Ten feet away from the water fountain and around a corner, there was a sink in a hallway outside the break room. [A witness] testified the sink was used for hand washing, food preparation, and to fill cups of water. Styrofoam cups were available five feet away on shelves in the break room.

*Id.* ¶ 5. The *Leandro* Court sustained the denial of compensation because the claimant's "job was to assemble parts," and "[h]er decision to go to her car rather than to use employer-provided resources was in furtherance of an on-the-premises personal purpose or mission, not in furtherance of an essential job function." *Id.* ¶ 12.

¶ 20 Although the *Carney* Court "agree[d] with the *Leandro* Court's interpretation of section 312(6)," it concluded that "the facts in that case are distinguishable." *Carney,* ¶ 26. In particular, the *Carney* Court concluded that "the personal mission exception to the parking lot rule" applied in *Leandro* was inapplicable to the circumstances presented in *Carney.* *Id.* The facts presented in *Carney* were deemed to be distinguishable because the claimant in *Carney* "testified that because [the employer's] cafeteria was closed during her night shift *it was necessary* for her to leave the premises in order to eat lunch." *Id.* ¶ 27 (emphasis added).

¶ 21 Here, Claimant's services as a "floater" were required throughout Employer's warehouse, but Claimant testified that her job did not "take[ ] place" outside Employer's warehouse, such as "around the area" where she fell on the sidewalk. In addition, Claim-ant testified Employer provided a lunchroom, that she had the ability to eat lunch in Employer's building, and that, nevertheless, she chose to leave the premises for lunch.

¶ 22 Unlike in *Carney,* where the cafeteria was closed and, in order to eat lunch, "it was necessary for [the claimant] to leave the premises," here, Claimant admits that a lunchroom was available, that she had the ability to eat lunch in Employer's building, and that she simply chose, instead, to leave the premises for lunch. As in *Leandro,* where the claimant made a "decision to go to her car rather than to use employer-provided resources," Claimant made a decision to leave work and go home for lunch rather than use employer-provided resources.

¶ 23 However, at least as it pertains to the circumstances of the present case, we disagree with the importance of the distinction, drawn in *Carney,* between the availability and nonavailability of employer-provided resources. Further, we conclude that the *Leandro* Court ultimately relied upon an overly narrow interpretation of the term "essential job functions."

¶ 24 "[I]njuries sustained while going to and coming from work, when occurring on employer's premises, are normally deemed to have arisen out of and in the course of employment." *Barnhill v. Smithway Motor Express,* 1999 OK 82, ¶ 15, 991 P.2d 527 (citation omitted) (emphasis omitted). "[P]ersonal comfort missions (e.g. using restroom facilities), during working hours on employer's premises, are generally considered in the course of employment...." *Id.* ¶ 16 (emphasis omitted).

> It is axiomatic that compensable injury must arise within time and space limitations of employment, and also within the course of activity related to employment. An employee's activity is work related if the employer's purposes are being carried out, or the employer's interests are being directly or indirectly advanced. This principle is the foundation for the doctrine that work-connected activity reaches *beyond the direct services performed and includes ministrations to the personal comfort and needs of employees.* For example, with

respect to the status of an employee while he is eating his lunch on the employer's premises, some courts have reasoned that food is essential to continued labor, and that an employee, in refreshing himself by eating during the lunch hour, is doing that which is a necessary incident of his employment.

This theory has provided basis for concluding that injury occurring during course of an unpaid lunch period on the employer's premises comes within course of the employment. *Similarly, it has been reasoned that if an injury which occurs while going to and from work on the premises is compensable, then an injury going to and from lunch on the premises is covered.* Thus, if going to and from lunch on the premises is within course of employment, then remaining on the premises and eating lunch must be within the employment.

The principle is not new. An early English case ... announced the principle. *A workman paid by the hour, but not including meal time, could take his meal on the premises, or go elsewhere as he chose.* The workman sat down to eat his meal on the premises and was injured by a falling wall. The court held the eating period did not break the employment, since the mere fact the employee was not paid for the time, and while eating was not engaged in main purpose of the work, did not create a cessation of the employment, since it was to the employer's advantage that employees have the opportunity to eat and thereby perform their work all the better.

*Richey v. Commander Mills, Inc.,* 1974 OK 47, ¶¶ 6–8, 521 P.2d 805 (citations omitted) (emphasis added). "[W]ork-connected activity reaches beyond direct services performed and includes ministrations to the personal comfort and needs of employees, while at work, and ... such activities are necessary incidents of the employment." *Barnhill,* ¶ 16 (citing *Richey* ).

¶ 25 In the present case, Claimant left Employer's premises during her allotted lunch break to eat lunch. She was not required to stay on premises for lunch, and could eat lunch on premises, or leave Employer's premises to eat lunch, as she chose.

Although compensation was denied in *Corbett v. Express Personnel,* 1997 OK 40, 936 P.2d 932, where the claimant was injured in the employer's parking lot while leaving work before his allotted break period and to do personal business at his bank, the facts presented in *Corbett* are plainly distinguishable from those presented in the present case. Here, Claimant sustained an injury, on Employer's premises, while returning from her lunch break. Claimant's activities were related to her needs to eat and drink—needs sufficiently related, even if indirectly, to her employment—and her ministration to these needs occurred during the time allotted by Employer, and her injury occurred while rightfully on the sole sidewalk to the front door of Employer's building. The time, place and circumstances of the accidental injury reveal that it occurred in the course of Claimant's employment. In this regard, see also *Fudge v. University of Oklahoma,* 1983 OK 67, ¶ 7, 673 P.2d 149 (Denial of compensation vacated by Supreme Court because claimant sustained her injury while walking to her car while "taking a regular lunch break," and "[a]bsent unusual circumstances ... a worker is not deemed to be without the scope of his employment while he is proceeding, during a regular lunch break, to his car that is parked in the employer-provided parking lot.") (footnote omitted).

¶ 26 Consequently, Claimant's injury must be deemed to have occurred in an area where essential job functions are performed, and to have occurred in the course of her employment. Therefore, we vacate the Order of the three-judge panel, and we remand for further proceedings.

## CONCLUSION

¶ 27 Based on our review, we conclude Claimant's on-premises injury that occurred while returning from her lunch break is *not* excluded as an injury occurring outside the course of her employment in an "area[ ] where essential job functions are not performed" under 85 O.S.2011 § 312(6). Therefore, we vacate the Order of the three-judge panel, and remand for further proceedings consistent with this Opinion.

¶ 28 **VACATED AND REMANDED FOR FURTHER PROCEEDINGS.**

RAPP, P.J., and THORNBRUGH, J., concur.